IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

THOMAS R. HENDERSON,                  §
                                      §
          Plaintiff,                  §
                                      §
v.                                    §          CIVIL NO. H-04-1437
                                      §
JO ANNE B. BARNHART,                  §
COMMISSIONER OF THE SOCIAL            §
SECURITY ADMINISTRATION,              §
                                      §
          Defendant.                  §

## <u>MEMORANDUM OPINION</u>

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Docket Entry No. 11) and Defendant's Cross Motion for Summary Judgment (Docket Entry No. 13).  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

## I.  Case Background

### A. Procedural History

In this action, Thomas R. Henderson ("Plaintiff") seeks review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("the Act").  Plaintiff initially filed his application on

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 10.

September 15, 1994.[2]  Plaintiff alleged that he was disabled and unable to work beginning on August 10, 1992.[3]  The back and hip pain creating Plaintiff's condition stemmed from a June 1992, work-related injury.[4]  Plaintiff's alleged onset date was amended to April 26, 1995.[5]

The Commissioner denied Plaintiff's application at the initial[6] and reconsideration levels,[7] and Plaintiff requested a hearing before an Administrative Law Judge of the Social Security Administration ("ALJ").  The ALJ granted the request and conducted a hearing in Bellaire, Texas, on July 17, 1998.[8]  After hearing the testimony and reviewing the administrative record, the ALJ issued an unfavorable decision on October 28, 1998.[9]  The ALJ found that Plaintiff was not able to return to his previous work as a pipe inspector, but that Plaintiff was not disabled because there were jobs in significant numbers within the national economy which he could perform.[10]  The ALJ based his decision on Plaintiff's ability

---

[2]      Administrative Transcript ("Tr.") 173-76.

[3]      Tr. 173.

[4]      Tr. 19.

[5]      Tr. 17.

[6]      Tr. 715.

[7]      Tr. 785-87.

[8]      Tr. 715.

[9]      Tr. 715-23.

[10]      Tr. 722.

to perform sedentary work, the credible testimony of the medical and vocational expert and Plaintiff's age, education and past relevant work.[11]

Plaintiff asked the Appeals Council to review the ALJ's decision.[12]  The Appeals Council granted his request for review on February 15, 2002, and vacated the ALJ decision.[13] The Appeals Council remanded the case to the ALJ for resolution of several issues including adjudication of a subsequent application for disability insurance benefits.  The subsequent application was filed by Plaintiff on May 16, 2001 and denied on July 17, 2001.[14] A second hearing before an ALJ was held in Bellaire, Texas, on May 22, 2003.[15] After listening to the testimony, reviewing the record, and specifically addressing the Appeals Council issues, the ALJ issued a second unfavorable decision on June 10, 2003.[16]  The ALJ found that Plaintiff was capable of performing "approximately 80 percent of sedentary, unskilled work" and that such jobs exist in significant numbers in the national economy.[17]  On March 13, 2004, the Appeals Council denied Plaintiff's request for review, and the

---

[11]     Id.

[12]     Tr. 727.

[13]     Tr. 730-33.

[14]     Id.; Tr. 734-36, 785.

[15]     Tr. 153.

[16]     Tr. 17-28.

[17]     Tr. 27-28.

ALJ's decision became the final decision of the Commissioner.[18] Having exhausted his administrative remedies,[19] Plaintiff brought this timely civil action for review of the Commissioner's decision, pursuant to 42 U.S.C. § 405(g).[20]

## B. Factual History

### 1. Plaintiff's Age, Education and Work Experience

Plaintiff was born on June 21, 1951, and is currently fifty-three years of age.[21]  He was forty-four years old at the time of his alleged onset date and forty-seven years old at the time his insured status expired.[22]  He has an eleventh grade education and a general equivalency diploma (GED).[23]  Plaintiff's past relevant work was as an oil-field tube inspector and foreman.[24]  Plaintiff met the special earnings requirements under Title II of the Act on his amended alleged onset date, April 26, 1995, and continued to meet the requirements until, but not after, December 31, 1998.[25]

---

[18]    Tr. 8.

[19]    See Harper v. Bowen, 813 F.2d 737, 739 (5th Cir. 1987) (summarizing the administrative steps a disability claimant must take in order to exhaust his administrative remedies).

[20]    Plaintiff's Original Complaint, Docket Entry No. 1.

[21]    Tr. 173.

[22]    Tr. 18.

[23]    Tr. 128-29.

[24]    Tr. 129.

[25]    Tr. 17.

4

**2. Plaintiff's Medical Evidence**

The medical record indicates that Plaintiff was injured on June 16, 1992, while lifting an inspection flow rack at work.[26] Plaintiff felt immediate pain from the injury, but continued to work until he felt a severe pain in his back when exiting his truck on August 10, 1992.[27]  On August 24, 1992, a magnetic resonance imaging scan ("MRI") indicated that Plaintiff had a herniated disc off to the left side at L5-S1.[28]  Plaintiff also complained of numbness in his left buttock and leg.[29]  On April 14, 1993, Glenn C. Landon, M.D., ("Dr. Landon") performed an L5-S1 microdiskectomy.[30]  A report from July 28, 1994, by Judith A. Kanzic, D.C., ("Dr. Kanzic") indicated that Plaintiff's "Total Whole Person Impairment" was only twenty percent.[31]  On December 7, 1994, Day P. McNeel, M.D., ("Dr. McNeel") performed a left lumbar radiculopathy with L5-S1 herniated nucleus pulposus on Plaintiff.[32] In his notes after the surgery, Dr. McNeel indicated that Plaintiff was doing well, was generally comfortable, and gradually getting

---

[26]     Tr. 565.

[27]     Tr. 311, 565.

[28]     Tr. 311.

[29]     Id.

[30]     Tr. 267.

[31]     Tr. 345.

[32]     Tr. 364.

back to normal.[33]

On April 26, 1995, Plaintiff completed Work Tolerance Testing. The results indicated an ability to withstand a sedentary physical demand level for eight-plus hours per day.[34]  Plaintiff visited Brent Powell, D.C., ("Dr. Powell") and, on April 3, 1996, Dr. Powell performed a functional capacity evaluation in which he concluded that Plaintiff was able to function at a sedentary-light physical demand level.[35]  Dr. Powell's notes indicate that on June 11, 1996, Plaintiff's motor strength testing was 5/5 of the lower extremities, and Plaintiff showed improvement in his range of motion since his initial evaluation.[36]  Plaintiff complained of paresthesias of the left lower extremities, but Dr. Powell indicated his deep tendon reflexes were equal and reactive.[37]  On March 10, 1997, per Dr. Powell's request, a lumbar myelogram was performed on Plaintiff that indicated that he had a left-sided laminectomy defect with posterior bulging and spondylosis and bilateral foraminal stenosis at the L5-S1 level as well as moderate broad-based left lateral protrusion at the L4-L5 level.[38]  On March 18, 1997, after his myelogram, Plaintiff was evaluated by Pedro M.

---

[33]    Tr. 373-74.

[34]    Tr. 383.

[35]    Tr. 451.

[36]    Tr. 441-42.

[37]    Tr. 442.

[38]    Tr. 604-06.

Caram, M.D. ("Dr. Caram").   Dr. Caram's report indicates that
Plaintiff had a well-healed scar with tenderness and mild left
sacroiliac ("SI") tenderness.[39]   Plaintiff's straight leg raising
test was negative with no SI joint pain, and Plaintiff was able to
bend greater than sixty degrees and extend greater than twenty-five
degrees.[40]   Additionally, Dr. Caram noted that Plaintiff showed
difficulty in squatting (which Dr. Caram attributed to disuse and
stiffness) but could tandem, heel and toe walk without difficulty,
and Plaintiff's sensation was otherwise normal.[41]

In March of 1998, Larry Pollock, Ph.D., ("Dr. Pollock")
performed a psychological consultative examination on Plaintiff.[42]
The examination indicated that Plaintiff had a full scale
intelligence quotient score (IQ) of 81 and average to mildly
deficient academic functioning.[43]   In his report, Dr. Pollock noted
that Plaintiff was experiencing emotional distress due to his
father's death and expressed pessimism about his own future, but
that Plaintiff was able to maintain "significant, lasting
relationships" and indicated that "injuring himself was not a
consideration."[44]   Dr. Pollock also noted Plaintiff's ability to

---

[39]   Tr. 545.

[40]   Id.

[41]   Id.

[42]   Tr. 565.

[43]   Id.

[44]   Tr. 569.

participate in the four-hour evaluation despite complaints of inability to focus and concentrate.[45]

An MRI dated October 1, 1999, detected that Plaintiff had a left paracentral lesion at L5-S1 due to scarring from either a re-herniation of the disc or from the prior operations.[46]  The MRI also indicated mild disc bulging at L4-5 without frank protrusion or extrusion and degenerative disc disease at L5-S1.[47]  Because of these results, Vivek P. Kushwaha, M.D., ("Dr. Kushwaha") performed an L5-S1 laminectomy, diskectomy and fusion on Plaintiff in October 2000.[48]

### 3. Administrative Hearing Testimony

At the initial administrative hearing conducted on July 17, 1998, Plaintiff, Dr. Frank L. Barnes (a medical expert specializing in orthopedic surgery, "ME1")[49] and Mr. Byron J. Pettingill (vocational expert, "VE1")[50] testified.  Plaintiff stated that he was actively applying for jobs and had an interview as recently as the prior month.[51]  Plaintiff discussed the physical demands and skills involved in his prior relevant work as a pipe inspector, as

---

[45]     Tr. 570.

[46]     Tr. 814-15.

[47]     Id.

[48]     Tr. 878-79.

[49]     Tr. 137.

[50]     Tr. 140.

[51]     Tr. 130-32.

well as his injuries, his pain, his depression and the medications used to treat both the pain symptoms and depression.[52]   Plaintiff answered questions about his specific physical abilities and discussed the effects of his depression on both his mood and ability to concentrate.[53]   Plaintiff also indicated that his visits to Dr. Powell were giving him relief from his back pain.[54]

ME1 testified next and summarized Plaintiff's two back surgeries and the psychiatric evaluation by Dr. Pollock.[55]   ME1 stated that Plaintiff had lumbar disc disease and depression, and, in his opinion, Plaintiff's condition did not meet or equal any of the listings[56] in the Regulations ("Listings").[57]   ME1 also stated that Plaintiff could perform sedentary level work with some limitations on the length of time he could sit or stand at one time based on Plaintiff's 1996 Functional Capacity Evaluation ("FCE").[58]

Next, VE1 testified and described Plaintiff's past work as skilled labor requiring a heavy physical exertional level with no skills readily transferable to sedentary work.[59]   When provided with

---

[52]   Tr. 132-34.

[53]   Tr. 134-35.

[54]   Tr. 136.

[55]   Tr. 137.

[56]   20 C.F.R. Part 404, Subpart P, Appendix 1.

[57]   Tr. 137.

[58]   Tr. 137-38.

[59]   Tr. 140.

the ALJ's hypothetical, VE1 indicated that Plaintiff was able to perform sedentary, unskilled work and specifically listed the jobs of eye-frame polisher, cashier, security monitor and bench work.[60] VE1 stated that there were significant numbers of such jobs in the national economy.[61]  Upon questioning by Plaintiff's attorney, VE1 indicated that Plaintiff's poor ability to deal with work stress would affect his abilities to perform some sedentary jobs, but that there were still jobs available that Plaintiff could perform.[62]

At the second administrative hearing, conducted on May 22, 2003, Plaintiff, M.K. Hamilton, M.D. (a medical expert specializing in orthopedic surgery, "ME2"),[63]  Nancy Tarrand, M.D. (a medical expert specializing in psychiatry, "ME3")[64] and Thomas King (vocational expert, "VE2")[65] testified.[66]  ME2 testified first and described Plaintiff's two surgeries and the treatments for his continuing back pain, as well as the October 1, 1999, MRI results.[67] ME2 stated that whether Plaintiff met a Listing as of December 31, 1998, depended on Plaintiff's credibility as to his complaints of

---

[60]    Tr. 140-41.

[61]    Id.

[62]    Tr. 145-150.

[63]    Tr. 17, 156.

[64]    Tr. 17, 161-66.

[65]    Tr. 17, 168-70.

[66]    Tr. 153.

[67]    Tr. 156.

pain; it might be severe enough to equal a Listing, if Plaintiff's complaints were believed.[68]   ME2 stated that there were not sufficient objective indicators as of December, 1998, to conclude that Plaintiff met a Listing.[69]   ME2 added that Plaintiff's back injury did meet or equal a Listing as of the MRI in October 1999.[70] ME2 testified that Dr. Caram's findings in 1997 indicated Plaintiff had mechanical back syndrome and entrapment of lateral femoral cutaneous nerve.[71]   ME2 testified that, in his opinion, these were not significant factors of Plaintiff's pain.[72]

ME3 testified next and summarized Plaintiff's depressive symptoms based on the evaluations of Arthur R. Tarbox, Ph.D., ("Dr. Tarbox") and Dr. Pollock.[73]   ME3 also indicated that Plaintiff had not received treatment for his mental symptoms until recently.[74] ME3 stated that, by combining symptoms from both psychiatric evaluations, Plaintiff does meet Section A of Listing 12.04.[75]   ME3 specified that Plaintiff had sleep disturbance, intermittent

---

[68]   Tr. 157.

[69]   Id.

[70]   Id.   The ALJ noted that this date is later than the date Plaintiff's insurance expired.

[71]   Tr. 159-60.

[72]   Id.

[73]   Tr. 161-62.

[74]   Id.

[75]   Tr. 162.

suicidal thoughts, feelings of guilt and worthlessness, and anhedonia.[76]  However, ME3 indicated that Plaintiff did not meet section B of that Listing because he had only a moderate impairment of his daily activities and no specific episodes of deterioration and decompensation before December 31, 1998.[77]

The ALJ provided ME3 with the following instruction:

[G]ood means the ability to function in the area is satisfactory in quality, quantity or degree, fair means the ability is neither excellent nor poor, it's moderately good or ample or average, poor means the ability in the area is unsatisfactory or meager ability but not precluded, and none means no useful ability to function in the area.[78]

The ALJ then asked ME3 to estimate Plaintiff's mental abilities to perform work-related activities.[79]  ME3 indicated that Plaintiff's abilities were good or fair for all activities listed, except: dealing with work pressures, understanding, remembering and carrying out complex job instructions and understanding, remembering and carrying out detailed but not complex job instructions.[80]  For each of these, ME3 indicated Plaintiff had a poor ability.[81]  When asked if Plaintiff's condition had improved, ME3 stated that it had not and noted Plaintiff's 1999

---

[76]    Id.

[77]    Tr. 162-63.

[78]    Tr. 163.

[79]    Id.

[80]    Tr. 164-65.

[81]    Tr. 164.

hospitalizations for depression.[82]

VE2 testified next.[83]  VE2 stated that Plaintiff's prior work was classified at a heavy exertional work level and was semi-skilled with no readily transferable skills to sedentary work.[84] The ALJ provided VE2 with a hypothetical of an individual who could only perform sedentary work, could sit only for periods of thirty minutes at a time and had the mental limitations indicated by ME3.[85] VE2 indicated that the described individual would be able to perform sedentary unskilled work with about a twenty-percent erosion of the work base, leaving approximately 20,000 jobs in the Houston regional economy.[86]  Plaintiff's attorney then asked if an individual functioning at less than sedentary level could perform the work that VE2 had mentioned, to which VE2 responded that such an individual could not perform the described work.[87]

Plaintiff was the final person to testify at the second administrative hearing.  He stated that, since the prior hearing, his back condition had worsened and he now used a back brace and cane.[88]

---

[82]     Tr. 165.

[83]     Tr. 168-70.

[84]     Tr. 168-69.

[85]     Tr. 169.

[86]     Id.

[87]     Tr. 170.

[88]     Tr. 170-71.

## II.  Legal Standard

### A. Standard of Review

This court's review of a final decision by the Commissioner denying disability benefits is limited to determining (1) whether substantial record evidence supports the decision and (2) whether the ALJ applied proper legal standards in evaluating the evidence. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive, and this court must affirm. Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); it is "more than a mere scintilla, and less than a preponderance." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. Johnson v. Bowen, 864 F. 2d 340, 343-44 (5th Cir. 1998). Under this standard, the court must review the entire record but may not reweigh the record evidence, determine the issues de novo or substitute its judgment for that of the Commissioner. Brown, 192 F.3d at 496.

14

**B. Standard to Determine Disability**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act. Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991). Specifically, under the legal standard for determining disability, the claimant must prove he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can expect to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see also Greenspan, 38 F.3d at 236. The existence of such disability must be demonstrated by "medically acceptable clinical and laboratory diagnostic findings." 42 U.S.C. §§ 423(d)(3), (d)(5); see also Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is disabled under this standard, Social Security Act regulations ("regulations") provide that a disability claim should be evaluated according to a sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled wihtout the need to consider vocational factors; (4) a claimant who is capable of performing work he has done in the past must be found "not disabled"; (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work

15

experience, and residual functional capacity must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520.  The claimant bears the burden of proof on the first four steps of the inquiry, while the Commissioner bears it on the fifth.  Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999); Brown, 192 F.3d at 498.  The Commissioner can satisfy this burden either by reliance on the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  Fraga v.Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987).  If the Commissioner satisfies her step-five burden of proof, the burden shifts back to the claimant to prove he cannot perform the work suggested.  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  The analysis stops at any point in the process upon a conclusive finding that the claimant is disabled or not disabled.  Greenspan, 38 F.3d at 236.

### III.  Analysis

In the 2003 ALJ formal decision, the ALJ noted that Plaintiff met the disability insured status requirements of the Act from the alleged onset date until December 31, 1998, but not thereafter.[89] The ALJ then followed the five-step process outlined in the regulations, finding at the first step that Plaintiff had not engaged in any substantial gainful activity during the relevant

---

[89]    Tr. 17.

period of consideration.[90]   At step two, the ALJ found that Plaintiff had the severe medically determinable impairments of status post lumbar laminectomy and fusion, lumbosacral radiculopathy and chronic pain syndrome.[91]   At step three, the ALJ found that these severe impairments did not meet or equal in severity the medical criteria for the Listings and therefore were not presumptively disabling under the Act.[92]

The ALJ considered the information contained in Plaintiff's medical records, and the testimony presented at the hearing and concluded that at step four, Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work where he could sit or stand at thirty-minute intervals.[93]   Based on Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform his past relevant work as a pipe inspector, which required a heavy level of exertion.[94]

At the final step, the ALJ found that, based on the Plaintiff's age, education, skills, work history, and RFC, Plaintiff was able to perform approximately eighty percent of unskilled, sedentary work and that such jobs constituted a

---

[90]    Tr. 27.

[91]    Id.

[92]    Id.

[93]    Id.

[94]    Tr. 28.

significant number in the national economy.[95]  The ALJ concluded the analysis at step five and found Plaintiff was not "disabled," as defined in the Act, at any time through the date his insured status expired.   Accordingly, the ALJ denied Plaintiff's claims for disability insurance benefits under Title II of the Act.[96]

In his motion for summary judgment, Plaintiff lays out three arguments specifying why the ALJ committed reversible error in his decision.  First, Plaintiff contends that the ALJ ignored testimony of ME2 as to Plaintiff's physical condition.[97]  Second, Plaintiff argues that the ALJ's instruction to the psychiatric medical expert was "unfathomable" and alleges a failure to establish Plaintiff's ability to perform basic mental demands of unskilled work.  Last, Plaintiff argues that VE2's testimony was at odds with the Dictionary of Occupational Titles ("DOT") and thus the ALJ erred in relying on such "flawed" testimony.

Defendant responds that the ALJ determination that Plaintiff's impairment did not meet or equal a Listing was proper based upon the evidence in the record and that substantial evidence supports the ALJ's Mental RFC Assessment.[98]  Defendant also contends that the ALJ correctly relied on VE testimony that Plaintiff could perform

---

[95]     Id.

[96]     Id.

[97]     Plaintiff's Motion and Memorandum for Summary Judgment, Docket Entry No. 12.

[98]     Defendant's Motion and Memorandum for Summary Judgment, Docket Entry No. 14.

work that existed in significant numbers in the national economy.

## A. Plaintiff's First Argument

Plaintiff first contends that the ALJ erred in ignoring the testimony of the medical expert as to Plaintiff's physical condition being equal to the Listings.  The court finds this argument disingenuous and disagrees.

The court points out that the ALJ did not ignore any of the evidence of ME2 as Plaintiff alleges.  In his brief, Plaintiff refers to three statements by ME2 which the court assumes are the basis of Plaintiff's argument.  The first statement Plaintiff mentions is ME2's testimony that Plaintiff's condition met or equaled the Listings at the time of the October 1999 MRI.  This MRI was performed after the date Plaintiff was last insured for disability benefits.  The ALJ decision noted the MRI date and specified that Plaintiff was not disabled during the eligibility period (which ended on December 31, 1998).[99]  Thus, the ALJ did not ignore this statement by the ME, but, based upon the date of the evidence, found it did not apply to the determination of Plaintiff's disability during the relevant time period.

The second statement to which Plaintiff refers in his brief is ME2's testimony that "with even a moderate degree of credibility, the Plaintiff's condition was also equal to the Listings."[100]  The

---

[99]     Tr. 19, 27.

[100]    Plaintiff's Motion and Memorandum for Summary Judgment, Docket Entry No. 11 at 5.

court finds Plaintiff's argument to be misleading.   ME2's entire

statement was that there was:

> not a lot in the way of objective findings to
> substantiate the pain but I think it would rest on his
> credibility about his complaints of pain and if they were
> -- if he were found to be even moderately credible, that
> his pain would be so severe that he would equal a
> listing.[101]

Plaintiff's argument glosses over ME2's mention of the lack of

objective findings and ME2's reference that only Plaintiff's pain

symptoms, if found credible, would bring Plaintiff to a severity

level equivalent to a Listing.   In his decision, the ALJ stated

that he did not find Plaintiff to be "wholly credible" or his

testimony regarding subjective symptoms and functional limitations

to be supported by the evidence.[102]   The ALJ based this

determination on the medical evidence in the record, observations

of Plaintiff noted by Dr. Pollock and his own observations of

Plaintiff during the hearing.[103]   The ALJ stated in his decision

that "the objective clinical findings do not support Plaintiff's

alleged symptoms or functional limitations," specifically that

Plaintiff suffered no neurological defects, no significant

orthopedic abnormalities and no serious disfunctioning of bodily

organs.[104]   Therefore, the ALJ did not ignore ME2's testimony, but

---

[101]   Tr. 157.

[102]   Tr. 27.

[103]   Tr. 22, 25-26.

[104]   Tr. 22.

found it unsupported due to Plaintiff's lack of credibility.

The third statement mentioned by Plaintiff in his brief was the testimony of ME2 that "from at least May 1998, the Plaintiff's treating physicians had been thoroughly consistent in finding the Plaintiff unable to perform even sedentary exertion."[105]  The court, again, finds this argument misleading.  The transcript shows that ME2 stated "*in May* [Plaintiff's] treating physicians" indicated he was not capable of doing sedentary work, not "*from at least May*", as Plaintiff states in his brief.[106]  Further, ME2 specifically named only one treating physician, Dr. Powell, as having such an opinion.[107]  The flaw in Plaintiff's argument is that Dr. Powell is a chiropractor.  A chiropractor is not a listed acceptable medical source under 20 C.F.R. § 404.1513(a), but is a source that the Social Security Administration may use to understand how an impairment affects one's ability to work.  20 C.F.R. § 404.1513(e).  As such, Dr. Powell's statements as to Plaintiff's abilities carry little, if any, weight.

The Second Circuit held in Diaz v. Shalala, 59 F.3d 307, 313-14 (2nd Cir. 1995), that chiropractors cannot provide medical opinions, and that there is no requirement for an ALJ to give a chiropractor's opinion controlling weight.  Additionally, 20 C.F.R.

---

[105]    Plaintiff's Motion and Memorandum for Summary Judgment, Docket Entry No. 11 at 5.

[106]    Tr. 158.

[107]    Id.

§ 404.1527(d)(2) states that a treating source's opinion will be given controlling weight if it is "well supported...and is not inconsistent with other substantial evidence . . . ." The ALJ found that there was substantial objective evidence indicating that Plaintiff's impairments did not preclude all work activity.[108] This finding highlighted the fact that the treating chiropractor's opinion was inconsistent with objective evidence in the record.

Additionally, even if Dr. Powell's testimony warranted controlling weight as an acceptable medical source, his opinion would not be determinative of whether or not Plaintiff is disabled under the law. Under the Act, the ultimate responsibility for determining a claimant's disability status lies with the Commissioner, and a medical source's statement that the claimant was "disabled" or "unable to work" does not mean the Commissioner will determine the claimant is, in fact, disabled. Spellman, 1 F.3d at 360. A determination of disability is not a medical opinion, but instead a legal conclusion only the Commissioner has authority to make. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003).

Plaintiff also supports his argument with ME2's remark that Plaintiff's treatment was generally used for severe pain. The Fifth Circuit has held that pain constitutes a disabling condition only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." Selders v. Sullivan, 914 F.2d 614, 618-19

---

[108]   Tr. 26.

(5th Cir. 1990) (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 480 (5th Cir. 1988)).  The ALJ agreed that Plaintiff experienced some pain and discomfort but found it to be mild to moderate, specifying that medication controlled the pain and that Plaintiff did not appear to be in pain or discomfort during the hearing.[109]  As such, the court finds that there is substantial evidence to support the ALJ's decision that Plaintiff's pain was not disabling.

In arguing that the ALJ ignored the testimony of ME2, Plaintiff's brief is both flawed and misleading.  For the reasons stated above, the court finds that the ALJ did not ignore any of the testimony in question.  Thus, the ALJ's decision that Plaintiff's condition did not equal a Listing was based on the proper legal standard and was supported by substantial evidence.

**B. Plaintiff's Second Argument**

Plaintiff argues that "the hearing transcript establishes that the ALJ's instruction to the psychiatric medical expert was unfathomable and, thus, the ALJ has failed to establish that Plaintiff was able to perform the basic mental demands of unskilled work, as described in Social Security Ruling ("SSR") 85-15."  The court disagrees with this argument.

The court, again, notes that Plaintiff's description of the ALJ's instruction is misleading.  Plaintiff's brief indicates that

---

[109]     <u>Id.</u>

23

the ALJ defined "fair" as "the ability to function ... is ample".[110]
In fact, the ALJ instruction defined "fair" as "the ability is
neither excellent nor poor, it's moderately good or ample or
average".[111]   When presented with the entirety of the ALJ's
instruction, and not simply one word from the instruction,
Plaintiff's argument loses merit.  It is difficult for the court to
extrapolate from Plaintiff's argument involving the Webster's
Dictionary definitions of "ample" and "satisfactory" that the ALJ
convoluted the terms "good" and "fair".

Plaintiff additionally discusses the Tenth Circuit definition
of "fair" as equating to a marked limitation in Cruse v. U.S.
Department of Health and Human Services, 49 F.3d 614, 617 (10th
Cir. 1995).  Assuming arguendo that the Tenth Circuit definition
would be adopted in the Fifth Circuit, ME3's determination of a
"fair" ability does not mandate a finding that Plaintiff is
disabled.  The ALJ noted in his decision that ME3 did not indicate
Plaintiff had any marked limitations of ability, but that ME3
stated that the impairment of Plaintiff's daily activities from his
depressive symptoms was only "moderately impaired at the most".[112]
This statement, as well as other evidence in the record,
contradicts a finding of "fair" ability (if defined as "marked")

---

[110]    Plaintiff's Motion and Memorandum for Summary Judgment, Docket Entry
No. 12 at 6.

[111]    Tr. 163.

[112]    Tr. 162.

24

and supports the ALJ's determination that Plaintiff is not disabled.

The court adds that the Eighth Circuit has chosen not to adopt the Tenth Circuit's definition of fair.  In 2000, the Eighth Circuit stated that the term fair is "both a measure of ability and disability.  It is on the balance between poor ability to function and greater ability to function." Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000).  The Eighth Circuit also stated that the term "requires a review of the entire record in order to judge whether the balance tips toward functional ability or disability." Cantrell 231 F.3d at 1107-08.  The ALJ followed an approach similar to that articulated by the Eighth Circuit by looking at the record as a whole and ME3's testimony as a whole, ultimately finding that Plaintiff's impairments did not reach the level of a disability.[113]

Plaintiff additionally argues that the ALJ failed to establish Plaintiff's ability to perform the basic mental demands of unskilled work and, as such, violated the instruction in Social Security Ruling ("SSR") 85-15, 1985 WL 56857 (S.S.A. 1985).  The title of this SSR is "Titles II and XVI: Capability to do Other Work- The Medical Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments." 1985 WL 56857 (S.S.A. 1985) (emphasis added).  This title clearly indicates that it applies in situations where an applicant does not suffer from exertional

---

[113]    Tr. 21-22, 27.

25

impairments. 1985 WL 56857.  Any instructions in SSR 85-15 to which Plaintiff refers do not apply to this case because Plaintiff suffers from exertional impairments in addition to his nonexertional impairment.  This SSR specifically refers to another ruling, SSR 83-14, 1983 WL 31254 (S.S.A. 1983), for evaluations of individuals with a combination of exertional and nonexertional impairments.

The stated purpose of SSR 83-14 is to explain "how to evaluate the vocational effects of nonexertional impairments within the context of the exertionally based table rules where claimants or beneficiaries also have severe exertional impairments that limit them to sedentary, light or medium work."[114]  This SSR states that when a person is not found disabled based upon their strength limitations alone, the ALJ should consider their limitations based upon Tables 1, 2 and 3 in 20 C.F.R. Part 404, Subpart P, Appendix 2 ("Grids") and, if needed, the testimony of a vocational expert.[115] In Plaintiff's second administrative hearing, the ALJ noted that Plaintiff's exertional impairments were not sufficient to find him disabled, then considered Plaintiff's age, education and work experience (the criteria used in the Grids) as well as VE2's testimony as to Plaintiff's abilities, and found that Plaintiff was

---

[114]    1983 WL 31254 at *1.

[115]    Id.

not disabled under the Act.[116]   Thus, the ALJ followed the instruction of the applicable SSR in determining that Plaintiff was not disabled.

Again, the court finds that Plaintiff's argument and supporting facts in his brief are misleading.  The SSR on which Plaintiff relies is improper for his particular impairments, and the ALJ instruction, on which Plaintiff bases his argument, is taken out of context.  For the reasons stated above, the court disagrees with Plaintiff's argument, finds that the ALJ instruction was not "unfathomable," the ALJ used the proper legal standard and the decision is supported by substantial evidence.

## C. Plaintiff's Third Argument

Plaintiff's final argument is that the testimony of the vocational expert was flawed and at odds with the Dictionary of Occupational Titles, violating SSR 00-4p, 2000 WL 1765299 (S.S.A. Dec. 4, 2000), and the ALJ erred in relying upon such testimony. The court disagrees with this argument.

At the second administrative hearing, the ALJ solicited the testimony of VE2 to help him determine Plaintiff's capability to work.  The ALJ posed one hypothetical question to VE2, asking him to address Plaintiff's capacity for work in light of a particular set of limitations.[117]  The hypothetical was framed as an individual

---

[116]   Tr. 26-27.

[117]   Tr. 169.

who:

> could perform sedentary work but would have to be able to
> sit or stand, in other words he could only sit for 30
> minutes at a time and would have to get up briefly or
> stand up but wouldn't have to leave the work area and had
> the mental limitations that Dr. Tarrand indicated to
> you.[118]

This hypothetical was proper because it included all of Plaintiff's disabilities and Plaintiff's attorney had the opportunity to correct any deficiencies. See Bowling v. Shalala, 36 F.3d 431 (5th 1994). In response to the hypothetical, VE2 stated that such an individual would be able to perform sedentary, unskilled work and that there would be about a twenty-percent erosion in the work base.[119] VE2 affirmed that this hypothetical would leave about 20,000 jobs in the sedentary, unskilled work base available in the Houston economy.[120] The only question which Plaintiff's counsel asked of VE2 was whether or not an individual who functioned at a less than sedentary level would be able to perform such jobs, to which VE2 indicated that such an individual would not be able to perform the jobs.[121]

An ALJ is required to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] . . . and information in the

---

[118]   Id.

[119]   Id.

[120]   Id.

[121]   Tr. 170.

Dictionary of Occupational Titles . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved."[122]  The DOT does not customize its job descriptions to a claimant's particular restrictions; instead, it only provides a general description of the exertional requirements and duties of that job. <u>See</u> United States Department of Labor, <u>Dictionary of Occupational Titles</u> (4th ed. 1991).  It is the vocational expert's job to take into account the claimant's limitations and determine whether the claimant is able to perform a certain job.  See <u>Ellison v. Sullivan</u>, 921 F.2d 816 (8th 1990); <u>Lastrape v. Barnhart</u>, 2005 WL 1391162 (E.D. Tex. 2005).

In 2000, the Fifth Circuit held that if an *indirect* conflict arises between the vocational expert's testimony and the DOT job descriptions, the ALJ may properly rely on the vocational expert's testimony provided the record reflects an adequate basis for doing so. <u>Carey v. Apfel</u>, 230 F.3d 131 (5th Cir. 2000)(emphasis added). The court in <u>Carey</u> defined a direct conflict as a conflict where the exertional level which the vocational expert states that a job requires is different from that listed in the DOT. <u>Id.</u> at 144.  The court did not specifically provide a definition for an indirect conflict.  In <u>Carey</u>, the court acknowledged that the DOT job descriptions "should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of

---

[122]    SSR 00-4p, 2000 WL 1765299 (S.S.A. Dec. 4, 2000).

an individual claimant's limitations on his or her ability to perform a particular job." Id. at 145.

In this case, Plaintiff alleges there is a conflict between VE2 testimony and the DOT, but fails to specify the conflict for the court.  The court assumes that Plaintiff is referring to a perceived conflict with testimony about Plaintiff's work abilities and the DOT. The court understands that the perceived conflict stems from ME3's statement (embodied in the ALJ's hypothetical) that Plaintiff has a poor ability to deal with work pressures.  In his brief, Plaintiff asserts that "even a cursory examination of the DOT reveals" that a person with a poor ability to deal with work pressures is "patently, **not** someone that can 'perform 80 percent of sedentary, unskilled work'".[123]   However, Plaintiff failed to provide any support for this statement. Additionally, in a more than cursory examination, the court was not able to locate any indication in the DOT job listings that this assertion is correct.  Because there is no conflict between the exertional level provided by the VE2 and the DOT listings, the court does not find that a direct conflict exists.  As the court cannot locate a direct conflict, it finds that the ALJ reliance on the testimony of the VE2 was proper, in accordance with the holding of Carey.

**D. Defendant's Motion for Summary Judgment**

Defendant asserts in her motion that the ALJ's decision should

---

[123]   Plaintiff's Motion and Memorandum for Summary Judgment, Docket Entry No. 12 at 8.

be affirmed because the ALJ's decision was supported by substantial evidence and the ALJ properly considered the record.[124]

The issue in this case is whether or not Defendant met her burden at step five of the sequential analysis in proving Plaintiff was able to perform a job that existed in significant numbers in the national economy.   For the reasons stated above, the court finds the Commissioner satisfied her burden.   As a result, the ALJ's decision finding Plaintiff not disabled is supported by substantial record evidence.   The court also agrees with Defendant that the ALJ applied proper legal standards in evaluating the evidence and in making her determination.   Therefore, Defendant's motion for summary judgment will be granted.

### IV.   Conclusion

Based on the foregoing, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Cross Motion for Summary Judgment.

SIGNED in Houston, Texas, this 27th day of June, 2005.

_____
Nancy K. Johnson
United States Magistrate Judge

---

[124]   Brief in Support of Defendant's Motion for Summary Judgment and Response to Plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 14.